KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR REYNOLPHO REYES-RODAS,<br><br>Defendant. | Criminal Case No. 08CR0017-H<br><br>Date: March 10, 2008<br>Time: 2:00 p.m.<br><br>The Honorable Marilyn L. Huff<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**1) COMPEL DISCOVERY AND PRESERVE EVIDENCE;**<br>**2) DISMISS INDICTMENT FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE;**<br>**3) SUPPRESS ANY STATEMENTS MADE BY DEFENDANT; AND**<br>**4) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

# I

# STATEMENT OF THE CASE

On January 2, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Edgar Reynolpho Reyes-Rodas ("Defendant") with one count of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b). On January 7, 2008, Defendant was arraigned on the Indictment and pled not guilty. On February 8, 2008, Defendant filed his discovery motion, motion to dismiss the indictment, and motion to suppress statements. On February 11, 2008, the Court continued the motion hearing and trial setting to March 10, 2008. On February 13, 2008, the United States filed motions for fingerprint exemplars, reciprocal discovery and leave to file further motions. The United States files the following response in opposition to Defendant's above-referenced motions.

# II

# STATEMENT OF FACTS

## A. <u>OFFENSE CONDUCT</u>

On October 19, 2007, at approximately 7:30 p.m., Officer C. Tews of the San Diego Police Department encountered Defendant loitering on the southwest corner of 47th and Polk Avenue in San Diego, California. Defendant was not wearing a shirt, and Officer Tews engaged Defendant in conversation regarding his tattoos. Defendant had "ESD" and "East San Diego" tattooed on his body. Defendant freely admitted to Officer Tews that he used to be a member of the East San Diego gang and that his moniker was "Penguin." When asked for identification, Defendant falsely stated that his name was "Alberto Rodriguez" and that he had never been arrested. Defendant then stated, falsely, that his name was "Alberto Reyes" and that he had been arrested for auto theft. Officer Tews conducted a further records check, which revealed that the Defendant's tattoos and birthday matched "Edgar Reyes" who had an outstanding immigration warrant for being a deported alien with a prior aggravated felony. Officer Tews confronted Defendant with this information, and Defendant freely admitted his name was "Edgar Reynolpho Reyes-Rodas." Officer Tews placed Defendant under arrest for the warrant, contacted immigration officials, and transported Defendant to a Border Patrol Station for processing.

/ /

On October 19, 2007, at approximately 10:17 p.m., Officer Tews met with U.S. Border Patrol Agent L. Campanella and Immigration and Customs Enforcement Agent R. Sanders at the El Cajon Border Patrol Station. Officer Tews provided the agents with Defendant's biographical information, and the agents were able to confirm that Defendant had an active immigration warrant for his arrest because Defendant was a deported criminal alien with a prior aggravated felony.

**B. <u>DEFENDANT'S IMMIGRATION HISTORY</u>**

Defendant is a citizen and national of Guatemala. On January 27, 1995, Defendant was ordered excluded, deported, and removed from the United States to Guatemala pursuant to an order issued by an immigration judge. On October 7, 1998, Defendant was again ordered excluded, deported, and removed from the United States to Guatemala pursuant to an order issued by an immigration judge. After the last time Defendant was lawfully ordered excluded, deported, and removed from the United States, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

**C. <u>DEFENDANT'S CRIMINAL HISTORY</u>**

Defendant has a criminal history, and the United States propounds that Defendant has six criminal history points placing him in Criminal History Category III. On May 20, 1998, Defendant was convicted of a felony for accessory (after the fact) by harboring a fugitive, in violation of California Penal Code § 32, and received a sentence of 16 months in prison. On January 26, 1995, Defendant was convicted, in the Southern District of California, of misdemeanor illegal entry, in violation Title 8, United States Code § 1325, and received a sentence from Judge Anthony Battaglia of time served. On January 14, 1998, Defendant was convicted of a felony for assault with a deadly weapon likely to cause great bodily injury, in violation of California Penal Code § 245(a)(1), and received a sentence of 364 days in jail. On July 15, 1998, Defendant was convicted of misdemeanor riot, in violation of California Penal Code § 404, and received a sentence of 10 days in jail.

/ /

/ /

/ /

## III

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A. MOTION TO PRESERVE EVIDENCE/COMPEL DISCOVERY

As of the date of this Motion, the United States has produced 115 pages of discovery (including reports of the arresting officers and agents, a criminal history report, documents concerning Defendant's prior convictions and immigration history), 1 DVD-ROM containing Defendant's videotaped, post-arrest statement, and 1 CD-ROM containing the dispatch recordings from the San Diego Police Department on the date Defendant was arrested. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

#### 1, 2. Defendant's Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens,

767 F.2d 574, 584 (9th Cir. 1984).

The United States also objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.19; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

**3. *Brady* Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

/ /

/ /

/ /

**4. Any Information That May Result in a Lower Sentence**

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

**5. Defendant's Prior Record**

The United States has already provided Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

**6. Any Proposed 404(b) or 609 Evidence**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

The United States intends to introduce Defendant's prior attempt to enter the United States on or about January 26, 1995 and February 15, 1997, as evidence of knowledge, lack of mistake and modus operandi under Fed. R. Evid. 404(b). Further, the United States intends to introduce Defendant's statements made on those two occasions under Fed. R. Evid. 404(b) as evidence of modus operandi. The United States has previously provided discovery of these incidents.

The United States will comply with its obligations under Rule 404(b) with regard to "TECS" records to the extent Rule 404(b) applies. However, the United States objects to this request for "TECS" records to the extent it constitutes rebuttal evidence because such evidence need not be produced in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**7, 10. Evidence Seized and Tangible Objects**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**8. Request for Preservation of Evidence**

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States does not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from Defendant in the instant offense.

**9. *Henthorn* Materials**

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th

Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review or oversee the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review or oversee the review of personnel files.

**11. Expert Witness**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

**12, 13, 15, 20, 23. Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material**

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

/ /

**14. Evidence of Criminal Investigation of Any United States' Witness**

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

**16, 17. Names of Witnesses and Witness Addresses**

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel.

The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him. The names of these individuals have already been provided to Defendant.

**18. Statements Relevant to the Defense**

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

**19. Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**21, 22. Agreements/Informants and Cooperating Witnesses**

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used

in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

**24. Reports of Scientific Tests or Examinations**

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

**25. Residual Request**

As indicated, the United States will comply with its discovery obligations in a timely manner.

**26. Alien File ("A-File")**

The United States will make Defendant's A-file available for inspection at a time mutually convenient to the parties and will continue to perform its duty under Brady and the discovery rules to disclose all material exculpatory information or evidence favorable to Defendant that is contained in the A-File. The documents in the A-File are not exculpatory. Most of the documents are highly incriminating in nature. The file contains numerous documents related to Defendant's immigration history and his criminal history. The documents establish that Defendant is an illegal alien with a felony criminal record who has been legally deported, removed from the United States, admonished of the

criminal sanctions under 8 U.S.C. § 1326, and, despite the prior warnings, subsequently reentered the United States without applying for permission. The United States objects, however, to providing a "full copy" of Defendant's A-File. The United States will provide all documents that fall within the scope of Fed. R. Crim. P. 16. and its discovery obligations.

**B. DISMISS INDICTMENT BECAUSE IT FAILS TO ALLEGE ELEMENTS**

**1. Failure to Allege A Voluntary Entry**

Defendant first asserts that the Indictment "utterly fails to state an offense" because it does not specifically allege that Defendant's unlawful entry into the United States was voluntary. As Defendant concedes [Def. Mot. at 9], this assertion is without merit and contrary to Ninth Circuit law.

Specifically, Defendant's argument is foreclosed by the opinion in United States v. Rivera-Sillas, 376 F.3d 887, 890-91 (9th Cir. 2004), wherein the Ninth Circuit recently held that, when a defendant alien is indicted under the "found in" clause of 8 U.S.C. § 1326, the indictment need not "specifically state that the defendant alien voluntarily entered the United States." See also United States v. Rodriguez-Rodriguez, 364 F.3d 1142, 1146 (9th Cir. 2004) ("it is not necessary to prove or allege voluntary or unlawful entry in a 'found in' conviction"); United States v. San Juan-Cruz, 314 F.3d 384, 390 (9th Cir. 2002) ("Voluntary entry need not be expressly pled in an indictment for a violation of 8 U.S.C. § 1326"). The Court recently confirmed this legal principle in United States v. Salazar-Gonzalez, 445 F.3d 1208, 1212 (9th Cir. 2006).

Further, in United States v. Parga-Rosas, 238 F.3d 1209 (9th Cir. 2001), the Ninth Circuit rejected the argument that an entry, or anything more than the language of the statute, must be alleged in a § 1326 "found in" case. The Court specifically held that alleging that the defendant is a deported alien subsequently found in the United States without permission suffices. Id. at 1213.

Finally, the Government notes that it is well established that an Indictment is required to state only the essential facts necessary to apprise the defendant of the crimes charged. See United States v. Markee, 425 F.2d 1043, 1047-48 (9th Cir. 1970). An indictment that sets forth the charged offense in the words of the statute itself is generally sufficient. See United States v. Johnson, 804 F.2d 1078, 1084 (9th Cir. 1986). Here, the Indictment tracks the language of the statute, and sufficiently informs Defendant of the crime charged.

**2. Failure to Allege Evasion of Inspection**

Defendant next argues that the Court should dismiss the Indictment for failure to allege inspection and admission by an immigration officer or actual and intentional evasion of inspection at the nearest inspection point. [Def. Mot. at 9.] This argument also lacks merit.

As the Ninth Circuit teaches in its Rivera-Sillas opinion, "[t]he Government need not plead and prove entry in order to charge or convict an alien with a § 1326 'found in' crime." See 376 F.3d at 891-92. Moreover, a deported alien does not have to enter this country illegally to meet the requirements of the "found in' clause of 8 U.S.C. § 1326. See United States v. Parga-Rosas, 238 F.3d 1209, 1213 (9th Cir. 2001) ("Alleging that the defendant is a deported alien subsequently found in the United States without permission suffices."); United States v. Ortiz-Villegas, 49 F.3d 1435 (9th Cir. 1995) (rejecting defendant's argument that he could not be convicted of 8 U.S.C. § 1326 because he did not enter the United States surreptitiously).

**3. Failure to Allege *Mens Rea***

Defendant levels his third attack on the Indictment by claiming that the Indictment must be dismissed because it does not allege a purportedly necessary *mens rea* element. [Def. Mot. at 9.] As with Defendant's other challenges to the Indictment, this argument proves unpersuasive and contrary to established Ninth Circuit law. Specifically, a "found in" offense under 8 U.S.C. § 1326 is a general intent crime. Rivera-Sillas, 376 F.3d at 892-93. An indictment that alleges that the defendant is "a deported alien subsequently found in the United States without permission suffices [to allege general intent].'" Id. at 892-93. Further, as the Court recently confirmed in United States v. Salazar-Gonzalez, 445 F.3d 1208, (9th Cir. 2006), while the Government must prove a voluntary entry, this fact need not be included in the Indictment. Id. at 1212.

**C. SUPPRESS ANY STATEMENTS MADE BY DEFENDANT**

Defendant moves this Court for an order suppressing any statements because they were allegedly made while in custody, citing Miranda v. Arizona, 384 U.S. 436 (1966). Defendant specifically asks for a suppression hearing to determine the admissibility of any statements. As explained further below, the United States does not believe that a suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold an evidentiary hearing on Defendant's Motion, the United States

will prove that Defendant's statements were voluntary, Defendant was not subject to custodial interrogation, and the statements are, therefore, admissible.[1] Defendant's motion should be denied because (1) he failed to provide a declaration as required under the local rules, and (2) on the merits because he was not in custody when he made his incriminating statements in the field. Moreover, any evidence derived from Defendant's statements should not be suppressed because the evidence was properly obtained without any due process violation.

**1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

This Court can and should deny Defendant's Motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to similar local rule in Central District of California); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in this case. Cf. United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be

---

[1] Defendant does not argue that any pre-arrest statements made by him should be suppressed, which they should not be because Defendant was not in custody at that time. See Miranda, 384 U.S. 436 (holding that under the Fourth Amendment a person must be advised of his rights prior to questioning after custodial arrest); United States v. Butler, 249 F.3d 1098 (9th Cir. 2001) ("The sine qua non of Miranda is custody.").

held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted).

Defendant does not dispute that no custodial interrogation occurred after Defendant invoked his right to silence. Defendant does not allege coercion, threats, or promises induced him to make his statements. Defendant does not allege that law enforcement officers violated his constitutional rights by continuing to question him after he invoked. "The fundamental import of the privilege while an individual is in custody is . . .whether he can be interrogated . . .Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." Miranda, 384 U.S. at 478. Without interrogation, there can be no Miranda violation, and a voluntary statement is admissible. See Medeiros v. Shimoda, 889 F.2d 819, 825 (9th Cir. 1989). For all the above reasons, this Court should deny Defendant's Motion. See Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts). For these reasons, Defendant's motion to suppress statements should be denied.

**2. Defendant's Field Statements Made To San Diego Police Officers**

Defendant's request to suppress his field admissions should also be denied on the merits because these statements were not made while in custody, and thus, Miranda warnings were not a necessary predicate. When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement thus has two components: (1) custody, and (2) interrogation. Id. at 477-78. Because Defendant was not in custody when he talked with San Diego Police Officers while loitering on the corner of 47th Street and Polk Avenue in San Diego, his motion to dismiss those statements lacks merit.

Whether a person is in custody is measured by an objective standard. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). A court must examine the totality of circumstances and determine "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." United States v. Booth, 669 F.3d 1231, 1235 (9th Cir. 1981); see also United States v. Beraun-Perez, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1) the language used to summon the individual; 2) the extent to which the defendant is confronted

with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to detain the individual." Id. (citation omitted).

The case of Florida v. Royer, 460 U.S. 491 (1983), is instructive. In Royer, two police detectives at the Miami International Airport were observing Royer and thought he fit a "drug courier profile." As Royer walked over to the airline boarding area, the two detectives approached him, identified themselves as police officers, and asked if Royer had a "moment" to speak with time. Royer said, "Yes." Id. at 493-494. Upon request, Royer produced his airline ticket and his driver's license. When asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer said a friend had made the reservation in the other name. Royer was noticeably more nervous during this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics. Id. at 494. The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with them. Id.

In deciding the case, the Supreme Court noted:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. (Citations omitted). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. (Citation omitted).

Id. at 497-498 (citations omitted).

Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached and questioned a worker in a field after a number of other workers had fled upon seeing the Border Patrol. The Court of Appeals found that no seizure had taken place in regard to the initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test. The officer approached the petitioner in an open field and asked him several questions

to which he responded voluntarily. There is no evidence of the use of physical force, a display of a weapon, or the threatening presence of several officers." Id. at 1311; see also United States v. Galindo-Gallegos, 244 F.3d 728, 730-732 (9th Cir. 2001).

Here, San Diego Police Officer Tews approached Defendant outdoors on the corner of 47th Street and Polk Avenue, a public street, because Officer Tews suspected Defendant of loitering. Officer Tews, wearing his official uniform, engaged Defendant in consensual conversation regarding the visible tattoos displayed on Defendant's body, as Defendant was not wearing a shirt. Defendant freely stated that he used to be a gang member of the East San Diego gang, that his gang moniker was "Penguin," and that the "ESD" tattoo on his body referred to "East San Diego." When asked for identification, Defendant provided the officer with two false names. After matching Defendant's tattoos and birthday via records checks to the name "Edgar Reynolpho Reyes-Rodas," who had an outstanding immigration warrant for being a deported alien with a prior aggravated felony, Officer Tews confronted Defendant with this information. Defendant freely admitted he was Edgar Reynolpho Reyes-Rodas.

Defendant's field admissions were made during a brief investigatory stop. See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law enforcement may make a brief investigatory stop and ask questions about citizenship and immigration status); United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that persons subjected to brief investigatory detentions are not entitled to Miranda warnings). Defendant answered those questions voluntarily. The record is devoid of any suggestion that the officers physically restrained Defendant or restricted his liberty in any meaningful way. Further, the fact that officers were armed or displayed badges does not turn a consensual encounter into a custodial situation. See United States v. Drayton, 536 U.S. 194, 204-205 (2002). There is simply nothing to suggest that Defendant was in custody during his field interview and his statements to officers in the field are admissible at trial.

**3. Defendant's Pre-Miranda Statements Made At The Border Patrol Station**

Defendant argues that his statements to immigration agents at the Border Patrol Station should be suppressed because those statements were made prior to a Miranda advisement and "served no purpose other than inculpation." [Def. Mot. at 9-10, 12.] The Ninth Circuit held that when the defendant is in custody, an inquiry by government agents into biographical matters or alien status in an

investigation for being a deported alien in the United States requires a Miranda warning prior to questioning. See United States v. Gonzalez-Sandoval, 894 F.2d 1043 (9th Cir. 1990); United States v. Equihua-Juarez, 851 F.2d 1222 (9th Cir. 1988).[2] Here, the only statement made by Defendant to Border Patrol agents prior to a Miranda advisement concerned his citizenship and his presence in the United States - Defendant stated that he was a citizen and national of Guatemala illegally present in the United States.

**4. Defendant Did Not Make Any Post-Miranda Statements**

Defendant was advised of his Miranda rights at 1:49 a.m. on October 19, 2007. Defendant, as is his right to do, invoked his Fifth Amendment right and declined to make any post-Miranda statements. As such, there are no post-Miranda statements for the Court to suppress.

**5. Non-Testimonial Evidence Is Admissible**

Defendant also contends that the Court must suppress any and all fruits of Defendant's initial statements, including all of the derivative evidence discovered by the United States. [Def. Mot. at 13.] This contention lacks merit. As the United States noted above, the "initial statements" or field admissions were not the product of a custodial interrogation, but rather part of a Terry stop, and therefore, a Miranda warning did not need to precede the questioning. [See, supra, Section III.C.2.] Thus, the derivative evidence (i.e., deportation record, fingerprints) that was derived from Defendant's field admissions should not be suppressed. See, e.g., Gonzalez-Sandoval, 894 F.2d at 1047-48.

In order to satisfy the requirements of the Fourth Amendment, an arrest must be supported by probable cause to believe that the arrestee has committed a crime." Allen v. City of Portland, 73 F.3d 232, 236 (9th Cir. 1996). Here, Officer Tews plainly had probable cause to arrest Defendant. Defendant, after being confronted with his two prior false statements, admitted he was "Edgar

---

[2] However, this case has one key factual distinction absent in Gonzalez-Sandoval and Equihua-Juarez - that is, Defendant, in this case, had given two false names as identification to Officer Tews. It was only after Defendant was confronted with a third name, "Edgar Reynolpho Reyes-Rodas," that Defendant told Officer Tews that was his true identity. In order to verify the veracity of this third identification, Border Patrol agents questioned Defendant as to his citizenship, and Defendant freely admitted that he was a citizen and national of Guatemala. Border Patrol agents, thereafter, confirmed the biographical information obtained by Officer Tews, with the citizenship admission made by Defendant, by performing a records check, which revealed that this third identification given by Defendant was, in fact, his true and correct identity. As such, the officers and agents were merely trying to determine Defendant's true identity to ensure that the person who was in custody was indeed the person who had the outstanding immigration warrant.

Reynolpho Reyes-Rodas," who had an outstanding immigration warrant for being a deported alien with a prior aggravated felony. Officer Tews confirmed the outstanding warrant with immigration officials, and thereafter, arrested Defendant on that warrant. Officer Tews, therefore, had probable cause to believe Defendant had violated 8 U.S.C., Section 1326, and rightfully placed Defendant under arrest. Accordingly, because Defendant's fingerprints were taken subsequent to a valid arrest and Defendant's deportation record was discovered subsequent to a valid arrest, Defendant's motion to suppress the use of such fingerprints or deportation record to establish identity must be denied. See, e.g., INS v. Lopez-Mendoza, 468 U.S. 1032 (1984) (a defendant's identity cannot be suppressed as the fruit of an illegal arrest); United States v. Guzman-Bruno, 27 F.3d 420 (9th Cir. 1994) (evidence relating to identity is similarly not suppressible); United States v. Parga-Rosas, 238 F.3d 1209 (9th Cir. 2001) (same).

**D. LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence, Dismiss the Indictment, Suppress Any Statements Made by Defendant, and Grant Leave to File Further Motions, unless unopposed.

DATED: March 3, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. EDGAR REYNOLPHO REYES-RODAS, Defendant. | ) | Criminal Case No. 08CR0017-H **CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY, PRESERVE EVIDENCE, DISMISS THE INDICTMENT, SUPPRESS ANY STATEMENTS MADE BY DEFENDANT, AND GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Leila W. Morgan, Esq.
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5008
*Lead Attorneys for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 3, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney